**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Milo AYEN, Defendant–Appellant.**

No. 92–1735.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1993.

Decided June 23, 1993.

Yvonne V. Watford–McKinney (briefed), Jennifer J. Peregord (argued), Office of the U.S. Atty., Detroit, MI, Janet L. Parker, Asst. U.S. Atty., Bay City, MI, for plaintiff-appellee.

William A. Brisbois (argued and briefed), Brisbois & Brisbois, Saginaw, MI, for defendant-appellant.

Before: RYAN and SILER, Circuit Judges; and LIVELY, Senior Circuit Judge.

SILER, Circuit Judge.

Defendant Milo G. Ayen appeals the denial of his pretrial motion to suppress evidence. He entered a conditional plea of guilty to the charge of manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1), reserving the right to appeal, under Fed.R.Crim.P. 11(a)(2). The issue is whether evidence should have been suppressed due to false statements in the affidavit upon which the search warrant was based. For the reasons

herein, we **AFFIRM** the order by the district court.

## I.

On September 12, 1990, a state search warrant was issued by a state judge and was executed on the premises of 10346 South Blair Road, Washington Township, Gratiot County, Michigan. Defendant resided at this location with his mother, the owner of the property. The search warrant listed the following items to be seized: (1) marijuana; (2) cash; (3) written records, such as telephone bills, power bills, letters or other documentation; (4) firearms; and (5) equipment used to facilitate the growth of marijuana. (A copy of the affidavit is attached as Appendix A.)

Gratiot County Sheriff Detective Michael Vetter stated in the supporting affidavit that on September 7, 1990, a male person who declined to identify himself for safety reasons informed Vetter that: (1) he had been to the "Ole James Ayen residence"[1] at 10346 South Blair Road on September 6, 1990, and observed a "large indoor growing marijuana operation in the basement of Ole Ayen's residence"; (2) one of the upstairs bedrooms was converted into a marijuana growing room with lights and timers; (3) Ole Ayen orders female marijuana seeds from Holland; (4) he had seen Ole Ayen and another individual place ten pounds of marijuana behind a hidden panel in the trunk of Ole Ayen's Chrysler K-car; (5) Ole Ayen uses the K-car to transport marijuana and money; (6) Ole Ayen keeps loaded weapons in the house; and (7) Ole Ayen shot a young boy on the Ayen property.

Vetter stated in the affidavit that on August 13, 1990, he had received a complaint from an unnamed female informant who stated that Ole Ayen was hauling marijuana on a four-wheeler around his property, and further that he contacted the Michigan State police and was advised on September 11, 1990, that three unnamed informants advised a state trooper that Ole Ayen was growing marijuana at 10346 South Blair Road.

In order to corroborate the informants' statements, Vetter stated in the affidavit that he: (1) ran a file check through LEIN and obtained information showing that Ole Ayen owned a 1982 Chrysler LeBaron, which is a K-car type; (2) personally observed a white and red Chrysler K-car and Honda four-wheeler parked in front of the 10346 South Blair Road home; (3) phoned Consumer's Power Company and was informed that Ole Ayen's electric usage had been running approximately 600 kilowatt hours per month higher than a comparable home, which could be due to the use of heat lamps; (4) contacted the Drug Enforcement Administration ("DEA") in Detroit, and was informed that Ole Ayen's name appeared on a list the DEA had compiled in its "Green Thumb" operation, which involved targeting individuals who purchased marijuana from Holland; and (5) determined, by reviewing Gratiot County Sheriff's Department records, that an accidental shooting of a child occurred on the Ayen property in 1988.

The search warrant, executed by state officers, produced: potted marijuana plants; burned marijuana plants; marijuana production equipment; seeds; paraphernalia; firearms; and records, including a receipt of a purchase of seeds from Holland. Defendant was charged in state court with violating Michigan's controlled substances law. Defendant's counsel moved to suppress the evidence, claiming the affidavit contained numerous false statements. The prosecution did not oppose suppressing the evidence, so defendant's case was dismissed, without a hearing on the motion.

Later, defendant was indicted in federal court, and he moved to quash the search warrant and suppress the evidence seized, alleging that the affidavit contained intentionally false and misleading information and lacked probable cause. A hearing was held, as required by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Vetter testified at the hearing that he had been a police officer for approximately twenty-one years; had participated in over one hundred search warrants; and had served as

---

1. Ole James Ayen is the deceased father of defendant Milo Ayen. Ole J. Ayen is the living brother of defendant Milo Ayen. He lived elsewhere, in Laingsburg, Michigan.

the affiant in over one hundred search warrants. Vetter had worked directly with Gratiot County Assistant Prosecutor Keith Kushion in preparing search warrant affidavits on at least one hundred occasions in the past. Kushion had prepared the affidavit for the instant search warrant from Vetter's Incident Report, from conversations with Vetter, and from information obtained through Undersheriff Neal Raymond.

As the affidavit was being prepared, Vetter was in a police helicopter flying over the South Blair Road property. The aircraft was equipped with a device designed to discover high levels of heat, indicating marijuana growing indoors. However, no unusually high level of heat was detected. Vetter thought this to be abnormal, as the device detected heat radiating from the surrounding homes. Thus, he determined that Ayen's house, a brick building, was well insulated or equipped with some type of ventilation. Vetter did not, however, include this information in the affidavit.

After the fly-over, Vetter returned to Kushion's office, as the affidavit was being printed. Vetter read the first two pages, but never read page three, because he was distracted by a radio communication which announced that property adjacent to the one in question was burning. Vetter believed that marijuana was being destroyed and proceeded immediately to the local magistrate. None of the information on the first two pages was false. Further, the search warrant itself was not flawed, as it described with particularity the premises to be searched.

The following errors in the affidavit were discovered in the *Franks* hearing: (1) Ole Ayen did not reside at 10346 South Blair Road, but had been deceased for approximately ten years; (2) defendant did not own a 1982 Chrysler K-car, but his mother did; (3) defendant's electrical usage had not been running higher than a comparable home, as the information was derived from a utility check on the address rather than on the customer's name; (4) DEA's marijuana investigation was called "Operation Green Merchant," rather than "Operation Green Thumb"; and (5) Ole Ayen's first name did

not appear on this list but the last name "Ayen" did appear. Vetter testified that he did not notice any inaccuracies after he read the first two pages.

The district court denied defendant's motion to quash the search warrant and suppress the evidence, finding that the inaccuracies in the search warrant were not made intentionally or with reckless disregard for the truth.

## II.

■ Factual findings by a district court should not be reversed unless clearly erroneous. Fed.R.Civ.P. 52(a). A factual finding will only be clearly erroneous when, although there is evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

## III.

■ Statements in an affidavit that are intentionally false or made with reckless disregard for the truth must be stricken. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676. After setting aside the affidavit's false material, if the remaining content of the affidavit is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search must be suppressed. *Id.* at 156, 98 S.Ct. at 2676. Defendant must establish by a preponderance of the evidence that: (1) the statements were made intentionally or with reckless disregard for the truth; (2) the deliberate falsity or reckless disregard is that of the affiant and not of the informant; and (3) negligence or innocent mistake does not account for the falsity. *Id.* at 156–71, 98 S.Ct. at 2676–84. Moreover, the deliberate falsehood must be material. *United States v. Campbell,* 878 F.2d 170, 173 (6th Cir.), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989).

■ The district court's determination that each of the mistakes was unintentional

and was not made with reckless disregard for the truth was not clearly erroneous. The court credited Vetter's and Kushion's testimony to find the following. First, Vetter attempted to corroborate the informant's testimony that a Chrysler K-car was being used to transport marijuana by personally observing the vehicle and running a "computer check" on its license plate. Vetter knew from the computer that the car belonged to defendant's mother even though it was translated by Kushion in the affidavit that the automobile belonged to defendant. Second, Vetter discovered during his investigation that "Ole" Ayen (the brother) did not reside at the South Blair Road address, but instead lived in Laingsburg, Michigan. Third, exigent circumstances, which developed as the affidavit was printing, justified the carelessness on Vetter's part. Moreover, Vetter could have justifiably gone to the property without a warrant since he reasonably thought there may be the destruction of evidence taking place. *See United States v. Sangineto–Miranda*, 859 F.2d 1501, 1511 (6th Cir.1988). Thus, the court determined that "[t]his is not a situation in which a court can reasonably conclude that there has been a wholesale abandonment of the responsibilities of an affiant to present a proper document and to swear to the accuracy of it under oath." Accordingly, "the presence of printed inaccuracies and the lack of attention given to page three were both inadvertent." Fourth, the absence of heat emanating from defendant's house along with the high utility bills could lead to the inference that "an indoor grower had gone to great lengths either to conserve energy or to hide heat emissions or both." The district court recognized the procedure of partially reading an affidavit to be improper, but found this action to be careless rather than reckless.

Defendant argues, however, that the inaccuracies in the affidavit were intentional and made with reckless disregard for the truth. In *United States v. Bennett*, 905 F.2d 931 (6th Cir.1990), the affiant alleged in the search warrant affidavit that an informant told him that he had seen the presence of marijuana in various places. However, at the *Franks* hearing, the affiant admitted that the informant had not made these state-

ments, which were material to a probable cause finding. The court held that the affidavit being insufficient without the falsities must fail and the fruits of the search must be suppressed. "Because [the affiant], by his own testimony, admitted that the statements in his affidavit were untrue, statements that clearly are material to the affidavit, we find that the district court's determination that there were no intentionally false statements nor any statements made in reckless disregard for the truth was clearly erroneous." *Id.* 905 F.2d at 934 (citing *United States v. Henson*, 848 F.2d 1374, 1381 (6th Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989)). Thus, defendant argues that Vetter testified that many of the statements in the affidavit were false, but the district court improperly held that there was no reckless disregard for the truth.

The government argues, however, that setting aside the inaccuracies, the search warrant is sufficient to show probable cause. We agree. The material fact in the affidavit was that a substantial indoor marijuana growing operation was observed at the location by two anonymous informants. Vetter attempted to corroborate the informants' statements. The search warrant was for the premises, not the person. Further, immaterial information included whether: (1) the person conducting the drug operation was Ole Ayen or defendant; (2) the K-car belonged to Ole Ayen or his mother; (3) Ole Ayen or another Ayen had marijuana seeds delivered to the South Blair Road property; and (4) heat was emanating from 10346 South Blair Road. Defendant cannot succeed in his challenge to the search warrant by demonstrating non-material negligence, carelessness, and innocent mistakes. *See United States v. Cummins*, 912 F.2d 98, 102–03 (6th Cir.1990).

Although there may have been insufficient probable cause to support the issuance of a search warrant based upon the statements on the first two pages of the affidavit, the truthful portions of page three of the affidavit can be used to uphold the issuance of the search warrant, as any truthful information may be considered. *Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684. The fault here is not that

Vetter did not read page three, but that there were erroneous statements on that page. Had page three been totally accurate in its recital of facts, Vetter's failure to read it would not be fatal to the warrant, as the information would not be false. *Franks* per- mits an attack on the affidavit when the statement therein is false, not when the officer negligently fails to read a portion of it. Accordingly, the judgment of conviction is **AFFIRMED.**

## APPENDIX A

Target Information Management, Inc.
P.O. Box 22003, Lansing, MI 48909

| STATE OF MICHIGAN 65-1 DISTRICT COURT | AFFIDAVIT FOR SEARCH WARRANT | CASE NO. |
|---|---|---|

*Please type or press hard*     *See other side for instructions*

POLICE AGENCY REPORT NUMBER. _____

_____ Michael Vetter _____, Affiant(s), state(s) that:

**1. The person, place or thing to be searched is described as and is located at:**

A two story, single family dwelling house located at 10346 S. Blair Road, Washington Township, Gratiot County, State of Michigan. The dwelling house is wood frame with brick facing and has an asphalt roof. There is a small wooden porch attached to the south side of the residence. Also to be searched are three small wood frame outbuildings located within the curtilage of the above described residence. Also all motor vehicles located upon the premises at 10346 S. Blair Road, Washington Township, Gratiot County, State of Michigan.

**2. The PROPERTY to be searched for and seized, if found, is specifically described as:**

Marijuana in undetermined amounts or quantities. United States Currency found in close proximity to said controlled substance. paraphernalia related to the preparation, sale and distribution of the controlled substance marijuana, including records in written form linking persons to the premises including telephone bills, power bills, letters or other documentation. Also to be seized are any firearms used to protect the controlled substance marijuana or the proceeds from the sale of the controlled substance marijuana and any equipment used to facilitate the growing of marijuana.

**3. The FACTS establishing probable cause or the grounds for search are:**

Affiant is a Detective Sergeant employed by the Gratiot County Sheriff's Department and has been employed as a deputy with the Gratiot County Sheriff's Department since 1981. Part of Affiant's duties include the investigation of controlled substance violations within Gratiot County. This affidavit is based upon information provided to Affiant by an unnamed informant. personal observations made by Affiant, information provided by officials at the United States Drug Enforcement Administration, and information gathered from other law enforcement personnel in Gratiot County.

On September 7, 1990 Affiant received a telephone call at the Gratiot County Sheriff's Department from a male subject who declined to identify himself because of fear for his personal safety and the safety of his family. This unnamed informant advised Affiant that he wished to report an indoor marijuana growing operation in Gratiot County. The

This affidavit consists of _3_ pages.

_Michael Vetter_
Affiant

Reviewed on _9-12-90_
Date
by _____
Prosecuting Official

Subscribed and sworn to before me on _9/12/90_
Date
_____
Judge/Magistrate

AFFIDAVIT AND SEARCH WARRANT, Form No. DCY231     (7 part, white)   Revised 5/82

1156

unnamed informant advised Affiant that he has been to the Ole James Aven residence located at 10346 S. Blair Road, Washington Township, Gratiot County, State of Michigan on Thursday, September 6, 1990. At that time the unnamed informant advised he observed a large indoor growing marijuana operation in the basement of Ole Aven's residence. This informant advised Affiant that Ole Aven has many growing lights and timers along with trays containing small marijuana plants in the basement of the above described residence to be searched. The unnamed informant also advised Affiant that one of the upstairs bedrooms in the Ole Aven residence had been converted into a marijuana growing room complete with lights and timers. This informant also advised Affiant that other upstairs rooms in the Ole Aven residence were used as drying rooms for marijuana and for the weighing and packaging of marijuana. The unnamed informant also advised Affiant that Ole Aven receives most of his marijuana seeds from the country of Holland and orders them by mail obtaining only female seeds. The unidentified informant further advised Affiant that on one prior occasion when he was at the Ole Aven residence he saw Ole Aven and Chuck Cerney, who the informant also advised lived at the Ole Aven residence, place ten (10) pounds of marijuana behind a hidden panel in the trunk of Ole Aven's Chrysler K car. The unnamed informant advised Affiant that Ole Aven uses this vehicle to transport marijuana and money to and from the St. Johns area. Affiant was further advised by this unnamed informant that Ole Aven keeps many loaded weapons in the house, both upstairs and in the basement, and that Affiant should proceed with caution because Ole Aven shot a youngster a couple of years ago who was looking around the Ole Aven property. The unnamed informant advised that he was from the Elsie area and that he would probably not contact Affiant again, however, his purpose in calling was to alert someone to the activities of Ole Aven because a lot of the marijuana produced by Ole Aven is sold in the Elsie area and ends up in the hands of school children and young adults.

On one prior occasion, August 13, 1990, Affiant had received another complaint from an unnamed female informant who contacted the Gratiot County Sheriff's Department by telephone and advised Affiant that Ole Aven was hauling marijuana on a 3-wheeler from the area surrounding his home to his home. Affiant has also made contact with Trooper Mark Barrows of the Michigan State Police Post #14 in reference to Ole Aven. On Tuesday, September 11, 1990 Affiant was advised by Trooper Mark Barrows that Trooper Barrows has had three unnamed informants advise him that Ole Aven was growing marijuana at 10346 S. Blair Road, Washington Township, Gratiot County, State of Michigan and that Ole Aven used the outbuildings for purposes of drying the marijuana.

Affiant commenced an investigation in an attempt to corroborate the information given to him by the unnamed informants and Trooper Mark

*Michael Vitter* 9-12-90

AFFIDAVIT FOR SEARCH WARRANT (continuation), Form No. DCV231a   (3 part, white)   Revised 1/81

| STATE OF MICHIGAN DISTRICT COURT | AFFIDAVIT FOR SEARCH WARRANT PAGE ___ OF ___ PAGES | CASE NO. |

Barrows and his unnamed informants. To determine whether or not Ole Avens owned a Chrysler K car. Affiant ran a file check through LEIN and obtained information showing that Ole Avens owns a 1982 Chrysler LeBaron automobile which is a K-car type. On September 10, 1990, Affiant drove by the Ole Aven residence and personally observed a white/red Chrysler K car sitting in the yard at 10346 S. Blair Road. At the same time, Affiant also observed a Honda 4-wheeler located in the yard at 10346 S. Blair Road. Affiant placed a call to the Consumer's Power Company and was advised by the employee of the Consumer's Power Company that Ole Aven's electric usage has been running approximately 600 killowat hours per month higher than would be expected from a comparable home. This increased use in electricity started with the June, 1989 billing. Based upon Affiant's experience in investigating drug trafficing, which is extensive and includes many hours of specialized training in this area as well as working on special assignment with the United States Drug Enforcement Administration, a marijuana growing operation employs the use of many heat lamps which result in increased electrical usage for the building associated with the marijuana growing operation.

In an attempt to further corroborate the information from the unnamed informants, Affiant contacted the United States Drug Enforment Administration in Detroit because Affiant was aware that the DEA had conducted an operation known as Operation Green Thumb which involves identifving individuals who were purchasing marijuana from the country of Holland. Affiant from his experience as a drug investigator knew that the Drug Enforcement Administration had compiled a list of names of individuals who were suspected of importing marijuana seeds from the Seed Bank which is a company in the country of Holland known to sell high breed marijuana seeds. DEA officials in the Detroit office, advised Affiant that Ole Aven's name appears on the list that was compiled as a result of Operation Green Thumb.

To determine whether or not there was any truth to the unnamed informant's claim that Ole Aven had shot a youngster who was around the Aven property, Affiant reviewed the 1993 records at the Gratiot County Sheriff's Department and determined that Complaint #1936-93 filed on July 17, 1993 involved the shooting of one youth by the name of Adam Paul Palmatier on the Ole Aven property and that Aven was the individual who shot the Palmatier youth. This incident was treated as an accidental shooting and the investigation closed at that time.

Based upon the foregoing, Affiant has probable cause to believe that a search of the Ole Aven residence and the outbuildings will reveal the presence of an indoor marijauana growing operation.

Michael Vitt
9-12-90

FIDAVIT FOR SEARCH WARRANT (continuation), Form No. DCY231a    (3 part, white)    Revised 1/81

RYAN, Circuit Judge, concurring separately.

I agree with the majority opinion's characterization of the standard to be applied in this case: "Statements in an affidavit that are intentionally false or made with reckless disregard for the truth must be stricken." Maj. op. at 1152 (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978)). I likewise agree that the inaccuracies on the third page are immaterial to the probable cause determination and the consequent issuance of the search warrant.

I must disagree that it was carelessness or inadvertence that led Vetter to sign the affidavit without reading the final page; it was, instead, behavior exhibiting a "reckless disregard for the truth" of the statements on that page. The district court's determination to the contrary is, in my judgment, clearly erroneous.

I concur.