UNITED STATES of America, Plaintiff,

v.

Darren Everett GARNETT, Defendant.

Civil Action No. 96–50021.

United States District Court, E.D. Michigan, Southern Division.

Dec. 19, 1996.

David W. Wright, Bloomfield Hills, MI, for Defendant.

Nancy A. Abraham, U.S. Attys. Office, Flint, MI, for Plaintiff.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

GADOLA, District Judge.

The defendant was charged on October 4, 1996 by a superseding indictment with five counts, including felon in possession of a firearm, aiding and abetting another felon to possess a firearm, and the making of a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(g), 924(e), 2, and 922(a)(6). On November 12, 1996, the defendant filed a motion to suppress evidence seized pursuant to a search warrant executed at 6080 E. Grand River Avenue in Brighton, Michigan. For the following reasons, this court will deny the defendant's motion.

### FACTS

On February 9, 1996, Michigan State Police Trooper Steven D. Rau[1] prepared an affidavit for a search warrant, which he presented to an Assistant Prosecutor, who reviewed and approved the affidavit. That same day, the affidavit was submitted to Judge Michael K. Hegarty of the 53rd District Court of Michigan in Livingston County and a search warrant was issued. The principal basis for seeking the search warrant was information supplied in January and February, 1996, by a confidential informant ("C/I") to Trooper Rau that in a building rented by the defendant at 6080 East Grand River Avenue, the defendant was selling alcohol to minors and was also engaged in narcotics trafficking. The warrant authorized the sheriff or any peace officer of the county "to seize, secure, tabulate and make return according to law" the following items:

[a]lcoholic beverages, receipts or records pertaining to the possession, ownership, and or sales of alcoholic beverages, [m]arijuana, controlled substances, narcotic paraphernalia, [m]aterials for diluting controlled substances, scales and weighing equipment for controlled substances, lists and records pertaining to the possession, ownership and/or ownership and/or resi-

---

1. Tropper Rau was assisted by Sergeant Robert Swackhamer in preparing the affidavit.

dency of the above place to be searched, guns and ammunition, officially recorded police currency, currency and coins, paging devices, telephone answering machines, [c]omputer and computer files, records pertaining to controlled substance trafficking and the sales of alcoholic beverages. The warrant was "anticipatory," in that it could only be executed upon the occurrence of triggering events, to wit: Trooper Rau's admittance into the building located at 6080 East Grand River Avenue on the evening of February 9, 1996, Trooper Rau's observance of under aged subjects purchasing alcoholic beverages and his witnessing of these illegal purchases being facilitated by the defendant.

Trooper Rau's affidavit to establish probable cause for the search may be fairly summarized as follows:[2] First, Trooper Rau averred that a C/I told him that the defendant and Mark Neal ("Neal") were operating an underground nightclub at the 6080 E. Grand River Avenue address, charging admission and selling alcoholic beverages to all paying persons, irrespective of their age. Trooper Rau asserted that the C/I had supplied accurate and truthful information on three prior occasions, and that Trooper Rau was able to confirm the veracity of the C/I's information through discussions with Sergeants Robert Swackhamer and David Bergsma.[3] Second, Trooper Rau stated in his affidavit that within 96 hours of February 9, 1996 (the date the search warrant was issued and executed), Trooper Rau was contacted by the same C/I "who stated a purchase of marijuana from the 6080 E. Grand river [sic] address had occurred and would be possible again" and that Trooper Rau thereafter was successful in sending the C/I to complete a controlled purchase of marijuana from the defendant at that location. According to the affidavit, during the controlled

sale, the defendant informed the C/I that "he would be getting more marijuana in the near future." Third, Trooper Rau avowed in the affidavit that he was informed by the same C/I that the defendant and Neal owned and possessed firearms.

The defendant filed a motion on November 4, 1996, to suppress evidence seized pursuant to the search warrant. In his motion, the defendant argues that the search warrant contained false information, was overbroad and lacked probable cause. Each one of these arguments will be addressed in turn.

### ANALYSIS

### 1. Whether the Defendant Is Entitled To An Evidentiary Hearing To Show the Affidavit Contained False Information

The defendant's first contention is that the search warrant was false in the following three respects: (1) the affidavit reflected that the defendant rented the entire premises at 6080 East Grand River Avenue, but in truth the defendant rented only the second floor and basement while the business, R U Safe, rented the main floor; (2) the affidavit's reference to information received from a C/I that marijuana was being sold from the main floor at 6080 East Grand River Avenue was fallacious; and (3) the affiant's assertion regarding statements made by the C/I that the defendant owned or possessed firearms was untrue.[4] The defendant requests an evidentiary hearing to demonstrate that the affidavit contained false information.

The test to determine if the defendant is entitled to an evidentiary hearing to show the affidavit contained false statements is two-pronged: first, the defendant must make a substantial preliminary showing that the affiant has intentionally or recklessly included a

**2.** A copy of the affidavit is attached at Appendix A.

**3.** First, these two police sergeants confirmed that the defendant occupied the 6080 East Grand River Avenue building: (1) Sergeant Swackhamer informed Trooper Rau that Paul Wagner, a Bloomfield Hills, Michigan resident, was renting the 6080 East Grand River Avenue building to the defendant so that he could operate a security consultant business; and (2) Sergeant Bergsma told Trooper Rau that the defendant had taken

out an assumed name at the Livingston County Clerk's office for a business called "R U Safe." Second, Sergeant Bergsma confirmed that on the preceding two Friday nights (January 26, 1996 and February 2, 1996), he had observed approximately 50 cars in the parking area surrounding 6080 East Grand River Avenue.

**4.** Typically, challenges to the veracity of statements found in an affidavit arise when the affidavit is sufficient on its face to support a finding of probable cause.

false statement in the warrant affidavit, and second, the defendant must make a substantial preliminary showing that the false statement is material, in the sense that it is necessary to find probable cause. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). *See also United States v. Skinner,* 972 F.2d 171, 175 (7th Cir.1992). In *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684, the Supreme Court expounded on how the defendant satisfies this two-pronged test:

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not any nongovernmental informant. Finally, and if these requirements are met, and if, when material that is subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments to his hearing. Whether he will prevail at the hearing is, of course, another issue.

With respect to the affidavit supporting the search warrant, "there is a presumption of validity." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684.

Although the defendant in the case at hand has pointed precisely to the paragraphs in the affidavit which are allegedly false, the defendant has not made a substantial preliminary showing that the affiant, Trooper Rau, intentionally or recklessly included the allegedly false statements in his affidavit. *See e.g. United States v. Ayen,* 997 F.2d 1150 (6th Cir.1993); *United States v. Cummins,* 912 F.2d 98 (6th Cir.1990); *United States v. Giacalone,* 853 F.2d 470 (6th Cir.), *cert. denied,* 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988).[5] The defendant's mere conclusory allegations that the affidavit contains three fabrications does not suffice to grant him an evidentiary hearing. It is incumbent upon the defendant to *claim* that Trooper Rau knew the statements to be false and to *offer proof* (e.g. affidavits or sworn or otherwise reliable statements of witnesses) which demonstrates Trooper Rau's deliberate state of mind. *See United States v. Ruddell,* 71 F.3d 331, 334 ("The lack of an affidavit or sworn statement offering proof of deliberate falsehood, as required by *Franks,* is enough in itself to defeat [defendant's] demand for an evidentiary hearing."). Absent the requisite showing of intentional perjury, the defendant's request for a suppression hearing to impugn the veracity of the affidavit must be denied.

Assuming arguendo, that the defendant had shown that the affiant, Trooper Rau, acted with reckless disregard, the defendant must nevertheless be denied an evidentiary hearing because the defendant has not satisfied the second prong, requiring that the three alleged falsehoods, taken together, be material. This court finds that if the allegedly false information in the affidavit was set aside, the remaining content of the affidavit would be sufficient to establish probable cause. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. Specifically, probable cause for the warrant would be established through the affidavit's detailed explanation of a very recent controlled purchase by a C/I from the defendant, the C/I's tip that the defendant was operating an underground nightclub, the

---

**5.** Note that the focus is not on the C/I's state of mind when providing the information. Rather, the proper inquiry is whether the *affiant,* Trooper Rau, made the allegedly false statements deliberately or with reckless disregard for the truth.

officer's surveillance of over 50 cars near the building, and the fact that the warrant was anticipatory.

## 2. Whether The Search Warrant Was Overbroad

■ Defendant's second allegation is that the warrant was overbroad because it extended to areas known by the affiant not to be involved in alcohol or marijuana sales. The defendant does not specify what areas were known by the affiant not to be involved in alcohol or marijuana sales. Yet, in his response brief, the defendant admits to selling alcoholic beverages to minors from the first floor. So, presumably, the defendant is arguing that the warrant was excessively broad by granting permission to search all three floors, including the basement and second floors, of the 6080 East Grand River Avenue building.

The search warrant identified the place to be searched as the entire 6080 East Grand River Avenue premises, in particular:

> 6080 E. Grand River, A white two story frame building, with a lighted business sign in the front yard area, a glassed front porch, a basement storage and work area, and a second story living quarters area, located on Grand River, Genoa Twp., Livingston, Co., MI.

This court finds that the warrant was not overbroad. First, the defendant has adduced no evidence that Trooper Rau knew that certain areas of 6080 East Grand River Avenue were not involved in alcohol or marijuana sales. Second, this court finds that it was objectively understandable and reasonable for Trooper Rau to request a search warrant for the entire building because in speaking with Sergeant's Swackhamer and Bergsma, Trooper Rau concluded that the defendant rented the entire building (e.g. all three floors). *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (holding that a search warrant authorizing a search of the entire third floor based on the mistaken

belief that there was only one, as opposed to two, apartments on the third floor was objectively understandable and reasonable since objective facts available to the officer suggested no distinction between defendant's apartment and the third floor). And, third, the scope of the search was permissible in light of the description of things to be seized. The warrant authorized a search for an unknown quantity of such items as alcoholic beverages, narcotics, receipts, guns, currency, and other contraband. Based on the objective facts available to Trooper Rau, there was no reason for Trooper Rau to believe that the materials listed in the affidavit would be found only on the first floor.

## 3. Whether There Was Probable Cause to Support The Search Warrant

Defendant's final argument is that there was no probable cause to support a search of the 6080 East Grand River Avenue address. Defendant's argument with respect to this issue is wanting indeed. First, the defendant proffers his "belief that District Judge Hegarty rubber stamped the request by Det [sic] Rau for the search warrant and the District Judge did not make an independent determination that probable cause existed." Next, the defendant makes the following bold-faced assertion: "[y]our Defendant believes that the record established at the time that this search warrant affidavit was presented to Judge Hegarty will prove the above belief of Defendant that the judge was acting as a rubber-stamped [sic] to the police." And lastly, the defendant "requests that this Honorable Court order that a transcript be made of the presentment of the Search Warrant Affidavit to Judge Hegarty so that it can be shown that the court was only a rubber stamp for the police."[6] It is interesting to note that the defendant does not cite *any* legal authority in support of this third claim, nor does he provide even *one* reason why he retains these beliefs. Rather, he presumes that his "rubber stamp" theory will become evident upon an examination of

6. The defendant does not argue that the judge lacked neutrality, *See e.g. Coolidge v. Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh'g. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971) (finding that the Attorney General who assumed charge of the investigation and acted as Chief Prosecutor and who issued the warrant was not neutral). Rather, the defendant insists that the judge did not give independent thought to the affidavit.

the transcript of the proceeding before Judge Hegarty.

### a. The Standard for Probable Cause

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 *reh'g. denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), the Supreme Court promulgated the "totality of circumstances" approach for testing the existence of probable cause to support the issuance of a warrant. In so doing, the Court recognized that probable cause is a "practical, nontechnical conception," which is premised upon "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* Accordingly, "the task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 239, 103 S.Ct. at 2332. If an anticipatory search warrant is sought, the question is not whether there is probable cause *now*, but rather whether, under the totality of circumstances, there *will be* probable cause at some future time and after some triggering event that certain evidence of a crime will be located at a specific place. *United States v. Lowe*, 575 F.2d 1193, 1194 (6th Cir.1978), *cert. denied*, 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978) (holding that for an anticipatory search warrant, the test is whether there is probable cause to believe that the "stuff" will be there when the search warrant is executed). The Supreme Court has instructed a reviewing court to give deference to a judge's probable cause determination, and simply ensure that there was a "substantial basis" for concluding that probable cause was present. *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332.

### b. Whether the Search Warrant At Issue Lacked Probable Cause

Applying the "totality of circumstances" standard, this court finds that there was a substantial basis for Judge Hegarty's finding that there would be probable cause to believe the items listed in the search warrant would be found at 6080 East Grand River Avenue after Trooper Rau was permitted to enter the premises and observed the defendant facilitating the sale of alcohol to minors. This court further holds that Judge Hegarty was not a "rubber stamp" for Trooper Rau's request.

■ The information in the affidavit is sufficient to support a finding of probable cause. In the affidavit, Trooper Rau averred that a C/I informed him that the defendant was running an underground nightclub at 6080 East Grand River Avenue. The C/I was "reliable" because he had thrice supplied accurate information in the past. In speaking with other credible sources, Trooper Rau then confirmed the C/I's assertions. For instance, Sergeant David Bergsma, another reliable source, shared with Trooper Rau his observation of over 50 cars in the parking area surrounding the East Grand River Avenue building on two recent occasions. And, Trooper Rau learned from Sergeant Swackhamer, yet another credible source, that the defendant was renting the entire building. Furthermore, the affidavit revealed that a C/I had apprised Trooper Rau of defendant's drug trafficking activities and that the C/I even had made a recent controlled buy of marijuana from the defendant at the location eventually searched. Moreover, Trooper Rau averred that the C/I told him that the defendant possessed weapons. For all these reasons, the judge had a substantial basis for issuing the warrant.

The judge's finding that probable cause would exist when the search warrant was executed is bolstered by the fact that the warrant was an anticipatory search warrant.[7] *See* W.R. LaFave & J.H. Israel, *Criminal Procedure* § 3.3, (2d ed. 1992) ("the typical anticipatory warrant is more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon the known prior location of the items to be seized"). Additionally, normal inferences provide the nexus between the illegal activity and the defendant's residence.

---

7. Anticipatory warrants are not unconstitutional *per se.* *United States v. Lawson*, 999 F.2d 985

(6th Cir.1993), *cert. denied*, 510 U.S. 1001, 114 S.Ct. 574, 126 L.Ed.2d 473 (1993).

*See e.g. United States v. Jones,* 994 F.2d 1051, 1055–56 (3d Cir.1993) ("If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases."); *United States v. Missouri,* 644 F.Supp. 108, 111 (E.D.Mich.1986) (citation omitted) ("Some courts have drawn the inference that known drug dealers are likely to keep drugs in their homes, even where there is no evidence directly leading to that inference."). Furthermore, the officers acted in good-faith reliance on the facially valid search warrant, rendering a suppression hearing inappropriate here. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 *reh'g. denied,* 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984) (carving out a "good-faith" exception to the probable cause requirement).

Defendant points out in his brief that Trooper Rau's affidavit was also used to obtain search warrants for two other locations: Neal's residence at 371 Woodcreek, Marion Township, Livingston County, Michigan, and Neal's storage area at Grand River Mini Storage in Howell, Township, Livingston County, Michigan. The defendant has no standing to contest the legality of these two searches, so this court will not belabor the issue any further. *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969), *reh'g. denied,* 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475 (1969) ("The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and co-defendants have been accorded no special standing.").

For all the foregoing reasons, the defendant's motion to suppress evidence is denied.

### ORDER

**IT IS HEREBY ORDERED** that the defendant's motion to suppress evidence seized pursuant to a search warrant is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's request for an evidentiary hearing is **DENIED.**

**SO ORDERED.**

### APPENDIX A

### STATE OF MICHIGAN

### AFFIDAVIT FOR SEARCH WARRANT

Affiant, states that the person, place or thing to be searched is described as and is located at:

6080 E. Grand River, A white two story frame building, with a lighted business sign in the front yard area, a glassed in front porch, a basement storage and work area, and a second story living quarters area, located on Grand River Ave., Genoa Twp., Livingston Co., MI.

The property to be searched for and seized, if found, is specifically described as:

Alcoholic beverages, receipts or records pertaining to the possession, ownership, and or sales of alcoholic beverages. Marijuana, controlled substances, narcotic paraphernalia, Materials for diluting controlled substances, scales and weighing equipment for controlled substances, lists and records pertaining to the possession, ownership and/or ownership and/or residency of the above place to be searched, guns and ammunition, officially recorded police currency, currency and coins, paging devices, telephone answering machines. Computers and computer files/records pertaining to controlled substance trafficking and the sales of alcoholic beverages.

The following facts are sworn to by Affiant in support of the issuance of this warrant:

1. Affiant is a Det. With the Michigan State Police, and has been a police officer for seven years.

2. Affiant is assigned to the LAWNET narcotics unit working in Livingston Co.

3. Affiant is conducting an investigation into the illegal sale of narcotics and alcoholic beverages to minors, that is ongoing at 6080 E. Grand River Ave., Genoa Twp., Livingston Co., MI.

4. Affiant was informed on Jan. 18th, 1996 by confidential informant number DN 7865 that narcotics traffic and sales of alcoholic beverages to minors were occurring at the 6080 E. Grand River Ave. address. Informant # DN 7865 identified the two subjects involved as Darren Garnett and Mark Neal. Informant # DN 7865 has provided information at least three occasion and this information has proven to be accurate and truthful. This information has consisted of names of three subjects who the DN said were selling drugs. This Affiant has been able to confirm as true each of these subjects and their involvement in narcotics trafficking.

5. Affiant has been told by D/Sgt. Robert Swackhamer that the building is owned by a Paul Wagner, of W. Bloomfield, MI and that Wagner is currently renting the entire building to Darren Garnett. Garnett has told Wagner that the purpose of renting the building is to operate a security consultant business.

6. Affiant has further been told by D/Sgt. David Bergsma of the Michigan State Police that Garnett and Neal have taken out an assumed name through the Livingston Co. Clerk's Office for a business called R U Safe.

7. Affiant has been told by D/Sgt. David Bergsma that there is no State Liquor license issued to Neal or Garnett, or a business called R U Safe, as required by State Law.

8. Affiant has been told by Informant # DN 7865 that Garnett and Neal are operating an "underground Nightclub" charging admission to the 6080 E. Grand River Ave. address and selling alcoholic beverages to all persons paying admission regardless of age. Informant # —— is under the age of 21 years old and did purchase and consume alcoholic beverages at 6080 E. Grand River Ave. on Jan. 28, 1996. Informant stated that there were at least 150 people present and a live band present at 6080 E. Grand River Ave.

9. Affiant has been told by D/Sgt. David Bergsma that on Friday Jan. 26, 1996 and Friday, Feb. 2, 1996 he has observed upwards of 50 cars in the parking area surrounding 6080 E. Grand River.

10. Within 96 hours of February 9, 1996 your Affiant was contacted by DN 7865 who stated a purchase of marijuana from the 6080 E. Grand river address had occurred and would be possible again.

11. Within 96 hours of February 9, 1996 your Affiant meet with DN 7865 at a prearranged spot. DN 7865 and his/her vehicle was searched and no narcotics or money were located. DN 7865 was provided prerecorded money and told to purchase marijuana from the 6080 E. Grand River address.

12. On the above date and time your Affiant followed the DN 7865 directly to the 6080 E. Grand River address. Your Affiant observed DN 7865 exit her/his vehicle and enter the 6080 E. Grand River Address.

13. After approx. Five minutes your Affiant observed the DN 7865 exit the 6080 E. Grand River address and followed the DN 7865 back to the meet spot.

14. On the above date as soon as it was safe to your Affiant spoke with the DN 7865 at the meet spot. DN handed your Affiant a clear bag of marijuana and stated that it was purchased directly from the suspect GARNETT. DN and his/her vehicle was searched and no other narcotics or money were located.

15. DN 7865 stated that the suspect Garnett stated that he would be getting more marijuana in the near future.

16. Affiant knows that subjects Mark Neal and Darren Garnett have both been convicted of Felony Burglary charges in Macomb Co. And are prohibited from possessing firearms.

17. Affiant was told by DN 7865 that Garnett and Neal told him that they own and possess firearms.

18. Affiant has checked Sec. of State records and found that Mark Neal's address is 371 Woodcreek, which is a one story duplex located on the East side of Woodcreek, north of Norton Rd., in Marion Twp. Livingston Co. Further described as having white siding on the upper half and brick on the lower half, with 371 on the front of the house, a common central hallway and the private entrance on the north side of the building.

19. Affiant was told by surveillance notes that Neal has been followed from 6080 E. Grand River to 371 Woodcreek.

20. Affiant's experience tells him that drug dealers typically will have scales, packaging materials, drugs and guns in their possession, at there homes, and other secure storage areas.

21. Affiant has learned that Neal has completed repairs on the duplex he is renting at 371 Woodcreek, Marion Twp., Livingston Co., MI, and has moved back into the duplex.

22. Affiant was told by D/Sgt. Swackhamer that Neal has a heated storage unit, # 328, located at the Grand River Mini Storage, 2440 W. Grand River, Howell Twp., Livingston Co., MI, and has had the unit since June of 1995. Further that Neal visited the storage unit on Feb. 7, 1996 at 9:40 PM for 16 minutes, and on Feb. 8, 1996 at 12:57 A.M. staying for 5 minutes.

24. Affiant is aware that criminals will at times rent storage units to keep their contraband in, as a means of keeping it physically separated from them, in an attempt to prevent law enforcement to prosecute them on additional charges.

25. It is anticipated that Affiant will be allowed admittance to 6080 E. Grand River on Friday Evening, that he will be charged a fee from admittance. Once inside it is anticipated that the Affiant will see under aged subjects purchasing alcoholic beverages, and that purchase being facilitated by Neal and/or Garnett. If these events take place this search warrant shall be executed. If these events do not take place the search warrant shall not be valid, and will not be executed.

Affiant further states that operation of an unlicensed business for the sale of alcoholic beverages, the sale of, possession, and control of money and controlled substances, and possession of alcoholic beverages by under aged persons constitute evidence of criminal conduct, and the issuance of this search warrant is necessary to gather and this evidence.

[Signature] Affiant Subscribed and sworn to before me this 9 day of Feb. 1996

[Signature] Judge in and for the 53rd District Court, County of Livingston State of Michigan.

*State of Michigan*
SEARCH WARRANT AND AFFIDAVIT
To the Sheriff or any peace officer of said county: Steven Rau,

Affiant, having subscribed and sworn to an affidavit for a Search Warrant, and I having under oath examined Affiant, and satisfied that probable cause exists:

THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I command that you search the following described place:

6080 E. Grand River, A white two story frame building, with a lighted business sign in the front yard area, a glassed in front porch, a basement storage and work area, and a second story living quarters area, located on Grand River Ave., Genoa Twp., Livingston Co., MI.

and to seize, secure, tabulate and make return according to law the following property and things:

Alcoholic beverages, receipts or records pertaining to the possession, ownership, and or sales of alcoholic beverages. Marijuana, controlled substances, narcotic paraphernalia, Materials for diluting controlled substances, scales and weighing equipment for controlled substances, lists and records pertaining to the possession, ownership and/or ownership and/or residency of the above place to be searched; guns and ammunition, officially recorded police currency, currency and coins, paging devices, telephone answering machines. Computers and computer files/records pertaining to controlled substance trafficking and the sales of alcoholic beverages.

ISSUED UNDER MY HAND THIS 9th DAY OF Feb. 1986—401 PM [Signature] [Signature] JUDGE IN AND FOR THE 53rd District COURT. COUNTY OF Livingston STATE OF MICHIGAN.