*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0326P (6th Cir.)
File Name: 00a0326p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: TENN-FLA PARTNERS, a
Tennessee General
Partnership,
                    *Debtor.*

Nos. 99-5264/5312

_____

TENN-FLA PARTNERS, a
Tennessee General
Partnership,
                    *Appellant/*
                    *Cross-Appellee,*

            *v.*

FIRST UNION NATIONAL
BANK OF FLORIDA, as Trustee,
                    *Appellee/*
                    *Cross-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 94-03038—Jerome Turner, District Judge.

Argued: August 3, 2000

Decided and Filed: September 18, 2000

1

Before: NELSON and NORRIS, Circuit Judges; MATIA, District Judge.*

---------------

**COUNSEL**

---------------

**ARGUED:** Bruce A. Markell, Henderson, Nevada, for Appellant. Michael P. Coury, WARING COX, Memphis, Tennessee, for Appellee. **ON BRIEF:** Bruce A. Markell, Henderson, Nevada, Henry C. Shelton III, ARMSTRONG ALLEN, Memphis, Tennessee, for Appellant. Michael P. Coury, WARING COX, Memphis, Tennessee, Robert T. Hyde, Jr., ROGERS, TOWERS, BAILEY, JONES & GAY, Jacksonville, Florida, for Appellee.

---------------

**OPINION**

---------------

ALAN E. NORRIS, Circuit Judge. In this Chapter 11 proceeding, Tenn-Fla Partners, a Tennessee general partnership, objects to a bankruptcy court order revoking its earlier confirmation of a proposed plan of reorganization. *In re Tenn-Fla Partners*, 170 B.R. 946 (Bkrtcy.W.D.Tenn. 1994). The bankruptcy court based the ruling on its finding that Tenn-Fla Partners had fraudulently obtained the confirmation order in violation of 11 U.S.C. § 1144. On appeal, the district court affirmed, *Tenn-Fla Partners v. First Union Nat'l Bank of Florida*, 229 B.R. 720 (W.D.Tenn. 1999), and it is from that decision that the partnership appeals.

For its part, trustee First Union National Bank of Florida ("First Union") cross-appeals from the district court's denial of punitive damages.

---

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

[T]he bondholders have been required to incur professional fees and expenses related to this revocation proceeding. The court had earlier allowed the bondholders' administrative expense claim; however, the bondholders unnecessarily had additional professional, including legal, expenses directly caused by the debtor's procuring its order of confirmation by fraud.

170 B.R. at 973. The district court affirmed in these terms: "While [Tenn-Fla Partners] is correct that ordinarily a court may not award attorney's fees in the absence of statutory or contractual authority, . . . an exception exists where fraud has been practiced upon the court." 229 B.R. at 737 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

While we agree that attorney's fees should be awarded only in rare circumstances, our conclusion that Tenn-Fla Partners perpetrated fraud upon the court justifies their award in this instance.

*3. Punitive Damages*

In its cross-appeal, First Union contends that the bankruptcy court should have awarded punitive damages. As First Union acknowledges, however, such an award lies within the discretion of the trial court. *Archer v. Macomb County Bank*, 853 F.2d 497, 500 (6th Cir. 1988); *In re Criswell* 52 B.R. 184, 206 (Bankr. E.D. Va. 1985). In our view, the bankruptcy court did not abuse that discretion in denying punitive damages for the reasons set forth in its order. 170 B.R. at 973.

**III.**

The judgment of the district court is **affirmed**.

recovery to satisfy the partners' personal exposure to First Tennessee Bank." *Id.* at 968.

We agree with the analysis of the bankruptcy court with respect to the nature of the fraud required to support revocation of a confirmation order and adopt the reasoning set out above. Specifically, we hold that fraud on the court can justify revocation under § 1144. After all, § 1144 provides that "the Court may revoke such order if and only if such order was procured by fraud." Since a confirmation order can only issue if its proponent demonstrates to the court that the requirements of § 1129 have been met, it stands to reason that the statute envisions that, to some extent, the fraud may be directed at the court. *See In re Longardner & Assocs., Inc.*, 855 F.2d 455, 460 (7th Cir. 1988) ("[S]ection 1144 expressly allowed the bankruptcy court to revoke its . . . order confirming the reorganization plan, if the creditor had met the prerequisite of showing that *the court was defrauded.*") (emphasis added); *First Union Nat'l Bank of Florida v. Perdido Motel Group, Inc.*, 142 B.R. 460, 464 (N.D.Ala. 1992) ("[1144] speaks of vacating an order of confirmation where that order was procured by fraud. It is thus fraud directed at the bankruptcy court that will provide the foundation for vacating an order of confirmation.") As the district court pointed out, "The integrity of the confirmation process is dependent on a plan proponent's honest compliance with the requirements of § 1129." 229 B.R. at 731.

Applying this legal framework, we conclude that the facts found by the bankruptcy court support its conclusion that fraud occurred in this case and that the revocation order was justified. *See* 229 B.R. at 731-35 (reviewing the facts of this case and applying the elements of fraud as contemplated by section 1144).

*2. Attorney's Fees and Costs*

Tenn-Fla Partners also appeals the bankruptcy court's decision to award attorney's fees and costs to First Union. The bankruptcy court provided the following rationale:

## I.

Tenn-Fla Partners served as an investment vehicle for individuals. At issue in this case is the sole asset held by the partnership: the Lakeside North at Altamonte Mall ("Lakeside"), an extensive apartment complex located in Orlando, Florida. In 1989, Tenn-Fla Partners refinanced the first mortgage with $12,685,000 worth of tax-exempt bonds issued by the Florida Housing Finance Authority. First Union serves as the indenture trustee for the bondholders.

Tenn-Fla Partners filed a voluntary Chapter 11 petition on July 17, 1992. This move was precipitated by a downturn in the Orlando real estate market, which allegedly reduced Lakeside's value well below the debt securing the property. The crux of this appeal involves the appropriate valuation of Lakeside. After extensive Chapter 11 proceedings, the bankruptcy court confirmed an amended plan proposed by Tenn-Fla Partners under which the partnership would purchase the property and outstanding bonds for $9,885,000. The court's confirmation order is dated January 21, 1994. However, on February 2, Tenn-Fla Partners entered into a contract with United Dominion, a real estate investment trust, which agreed to purchase the bonds and property for $12,443,547. As the bankruptcy court noted, this sale resulted in "an apparent net recovery to the debtor of approximately $2,500,000 over the amounts necessary to pay the bondholders and other creditors under the plan." 170 B.R. at 951. In revoking its order of confirmation, the court further found that Tenn-Fla Partners had "deliberately put off the receipt of offers until after the confirmation of its plan [and] . . . failed to disclose to First Union, other creditors, or the court that the debtor was engaged in discussions with any interested purchasers, including United Dominion." *Id.* at 953.

After an extensive review of the facts, the bankruptcy court summarized its findings in these terms:

From its discussion of the proof, it is evident to the court that the debtor provided misleading and incomplete

disclosures, that the debtor had serious contacts with several motivated and qualified purchasers at prices far exceeding what the debtor was offering to the bondholders, that the effect of the debtor's actions was to misrepresent the market for and market value of the property, that the debtor intentionally discouraged the submission of offers prior to confirmation, that the debtor concealed or "parked" purchasers until after the confirmation, that the debtor was motivated to accomplish its goal of protecting the investment of its insider partners by assuring payment of their recourse First Tennessee Bank debt, and that the debtor misrepresented to the court at the confirmation hearing that it was in compliance with all elements of § 1129(a). In summary, the debtor violated its debtor in possession obligations and engaged in self-dealing to the expense of the bondholders, who had been induced by the debtor's misrepresentations to give up their § 1111(b)(2) election. All of this was accomplished by the debtor without adequate disclosure to the court or to creditors until after the confirmation hearing and order.

*Id.* at 963.

The complicated series of events that led the court to this conclusion are summarized at length in its opinion. 170 B.R. at 951-63. This court, of course, reviews a bankruptcy court's findings of fact for clear error. *See Trident Assocs. Ltd. Partnership v. Metropolitan Life Ins. Co.*, 52 F.3d 127, 130 (6th Cir. 1995). "A factual finding will only be clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993) (citation omitted). On appeal to this court, Tenn-Fla Partners does not seriously dispute the factual findings of the bankruptcy court; rather, it takes issue with the manner in which the court applied the law to those facts.

(2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;

(3) that the representation was made to induce the court to rely upon it;

(4) [that] the court did rely upon it; and

(5) that as a consequence of such reliance, the court entered the confirmation order.

The last three of these elements for necessary fraud illustrate that "fraud on the court is one species [of fraud] that unquestionably is a basis for revoking the order confirming a plan of reorganization." *In re Michelson*, 141 B.R. 715, 725 (Bankr. E.D. Cal. 1992). "The debtor in this case attempted to show that there was no fraud against First Union or the bondholders or that First Union somehow shared responsibility for any misdeed on the debtor's part. Those arguments miss the critical point that the court was deceived in its decision to confirm the debtor's plan when the debtor knowingly concealed information about the true market value and willing purchasers of the debtor's sole asset."

*Id.* at 967. The court proceeded to explain its view of how this legal framework interacted with the facts before it. First, it observed that the duty of full disclosure rests with a plan's proponent under §§ 1125 and 1129. In the case at bar, the "debtor's disclosures and plans never disclosed the true level of interest in purchasing the property; thus, the debtor intentionally deprived the court, creditors and parties in interest of knowledge that was material in this case." *Id.* Second, the court concluded that Tenn-Fla Partners had not acted in good faith because it had "deliberately stalled purchasers, concealed that information, and repurchased the partner's equity interest at a sharp discount, knowing that it would be able immediately to resell the property with enough

With this by way of background, we turn to the legal arguments raised by both parties. Our review of the bankruptcy court's legal conclusions is *de novo*. *Trident Assocs.*, 52 F.3d at 130.

## II.

### 1. Fraud as Contemplated by Section 1144

Under 11 U.S.C. § 1144, a bankruptcy court can revoke a confirmation order:

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall –

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

11 U.S.C. § 1144. In this case, the bankruptcy court looked to the meaning of fraud as used in this section and concluded that it must be "actual" as opposed to constructive fraud; thus, there must be evidence of fraudulent intent. 170 B.R. at 966. However, the court noted that actual fraud may be established with circumstantial evidence and went on to observe:

With regard to fraud necessary for revocation of an order on a confirmed plan, it has been held in the chapter 13 context and adopted in the chapter 11 context that the plaintiff must prove:

(1) that the debtor made a representation regarding . . . compliance with Code § [1129] which was materially false;

Since the underlying facts are not in dispute, we will simply quote from the district court's summary of the bankruptcy court's detailed findings in order to give context to our subsequent discussion of the law:

a) First Union's interest was in getting the highest possible price for the property.

b) United Dominion, through its representative Benjamin Norbom, was told about the property in the fall of 1993. TFP [Tenn-Fla Partners] and United Dominion had continuous discussions between August 1993 and October 1993 concerning United Dominion's interest in the property. Although TFP claimed it only discussed financing with United Dominion, the bankruptcy court found any discussion of financing was premised on United Dominion having an option to purchase the property.

c) Ray Coleman, the property manager, was told in November of 1993 by Jack Friedman, a broker, that Colonial Properties was interested in purchasing the property. Coleman told Colonial's representative that the property was in bankruptcy and would not be available for sale until after bankruptcy. Colonial kept in constant contact with Coleman, and ultimately made a $12,250,000 offer for the property on or about February 4, 1994.

d) Coleman was told by Cole Whitaker, a broker, in late 1993 that JMB Institutional Realty wanted an exclusive right to purchase the property. Coleman told a JMB representative that the property was in bankruptcy and that no offers could be accepted until TFP's plan had been accepted by the bankruptcy court. During these discussions, JMB indicated an interest in paying in the mid-$11,000,000 range for the property. JMB's interest continued right through the confirmation process, and a JMB representative testified the only reason for their delay in making a firm offer was Coleman's refusal to deal until after TFP's plan was confirmed.

e) In November of 1993, Coleman sent a solicitation letter to the bondholders urging them to accept the TFP plan. The letter represented that absent their acceptance of TFP's plan, there was a possibility that the bondholders "could be left without a buyer."

f) Coleman believed he would not get a real estate commission if the property was sold during bankruptcy. The bankruptcy court inferred from this that Coleman's primary concern may have been his own best interest.

g) Coleman told Robert Smith, the broker who eventually produced the successful offer from United Dominion, not to place further offers on the property until it was out of bankruptcy, and to have his main buyer ready as soon as TFP was out of bankruptcy.

h) TFP's partners had a personal obligation to First Tennessee Bank for approximately $2,500,000 they had borrowed to fund operating shortfalls of the property. Bryson Randolph, a consultant to TFP, testified that TFP intended to pay the bondholders a minimum amount of cash as quickly as possible and to create an investment recovery for its partners. An internal memorandum prepared by Norbom noted that United Dominion could not participate in TFP's plan of reorganization because TFP's goal was to receive approximately two million dollars in excess of the discounted value of the bonds. If United Dominion participated, First Union would seek the excess for the bondholders. The bankruptcy court inferred from the above that TFP intended to hide the true value of the property and sell soon after confirmation, using the excess proceeds to satisfy the personal obligations of TFP's equity holders.

i) Coleman was aware that he was under a duty to disclose any offers to purchase the property. While TFP did disclose an $8,000,000 offer on the property from FRM Properties, TFP did not disclose its contact with United Dominion, Colonial Properties or JMB. The bankruptcy court inferred from this that the lower offer

was disclosed to play down the value of the property, while the more serious interest was hidden so the equity holders might take advantage post-confirmation.

229 B.R. at 725-26.

Based upon these findings, the bankruptcy court, as already mentioned, revoked its order of confirmation. The district court summarized the bankruptcy court's reasoning in this fashion:

> The bankruptcy court . . . found the undisclosed information to be material and that TFP was under a duty to disclose it. The bankruptcy court based this duty of disclosure on three separate grounds: a plan proponent's duty to comply with the disclosure requirements of § 1125; a plan proponent's duty to propose a plan in good faith; and the fiduciary duty of a debtor in possession. The court also found that as a fiduciary, TFP was not only obligated to disclose pre-confirmation interest in the property, but was obligated to maximize the value of the property for all creditors. The court found the failure to disclose the true value of the property was fraudulent within the meaning of § 1144, in that by concealing the true value of the property TFP induced the court to believe at the confirmation hearing that TFP had fully disclosed all material information and that it had proposed its plan in good faith. The bankruptcy court revoked the order of confirmation and awarded First Union attorney's fees and expenses. The court refused to impose punitive damages on TFP, however, and did not award to First Union as compensatory damages all sums paid out of the proceeds of the sale of the property to subordinate secured and unsecured creditors. The court also converted the case to a Chapter 7 proceeding and directed the United States Trustee to appoint an interim trustee.

*Id.* at 726-727.