NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0482n.06

Nos. 09-4432, 10-4321, 10-4322

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 08, 2012*

LEONARD GREEN, Clerk

In re: ROYAL MANOR MANAGEMENT,
INC., et al.

    Debtor

_____

ALISON GORDON and DAVID GORDON,

    Appellants,

v.

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,

    Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

Before: GIBBONS and SUTTON, Circuit Judges; DUGGAN, District Judge.[*]

SUTTON, Circuit Judge. This consolidated appeal arises from a series of bankruptcy court orders denying claims by two would-be creditors, Alison and David Gordon. The district court affirmed all of the bankruptcy court rulings, and so do we.

_____

[*]The Honorable Patrick J. Duggan, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

At the heart of this case is an agreement concerning a $1 million transaction that Gertrude Gordon undertook on behalf of her children, Alison and David Gordon. Gertrude loaned $1 million to her sister and brother-in-law, Sally and Abraham Schwartz, who were the majority owners of Dani and Darlington, two interrelated companies that together owned and operated a nursing home.

An agreement memorialized the transaction. The first line of the agreement said "Sally and Abraham Schwartz to Gertrude, David, Alison Gordon." Bankr. R.615 at 52. It provided terms for repayment, including that the principal investment would be repaid by July 2002. Sally and Abraham Schwartz signed the agreement. The Gordons never received any payments and did not challenge the default until 2008. No one signed the agreement on behalf of Dani or Darlington.

In 2008, Dani and Darlington filed for Chapter 11 bankruptcy. Of relevance here, Alison and David (from now on, "the Gordons") filed a claim for more than $2 million (principal plus interest) against the bankruptcy estate, invoking the above agreement. During discovery, the Gordons learned of new documents related to the $1 million transaction. They moved to file a new claim based on the new information, but the bankruptcy court denied the motion. The court held a bench trial on the Gordons' original claim and denied it, too.

The Gordons appealed three orders of the bankruptcy court: (1) the order denying their original claim, (2) the order denying their motion to file a new claim, and (3) an order striking the trustee's exhibit list from the record. The district court affirmed all three orders.

II.

*Denial of the Gordon's original claim*.  The Gordons contend that the July 2000 agreement establishes an unsecured claim against the Dani/Darlington bankruptcy estate.  The bankruptcy and district courts disagreed, holding that the agreement created a personal obligation of the Schwartzes, not an obligation of Dani or Darlington.  That is correct.

For one, the language of the agreement supports this interpretation.  The agreement begins with this language—"Sally and Abraham Schwartz to Gertrude, David, Alison Gordon," Bankr. R.615 at 52— saying nothing about Dani or Darlington.  It continues with a series of personal promises:  that Gertrude Gordon will receive free nursing care "provided by the Schwartz Family"; that David and Alison Gordon have loaned "to the Schwartz[es] . . . [$1 million]"; that the Gordons are guaranteed to receive an annual profit "guaranteed by the Schwartz[es]"; that "[t]he Schwartz[es] agree to pay all costs" and losses associated with the loan; and that "Schwartz" will pay when any losses are due.  *Id*.  All of these statements refer to the Schwartzes personally; none refers to Dani or Darlington.

For another, the Schwartzes signed the agreement on their own behalf.  It is hornbook law that, when individuals sign agreements on their own behalf without disclosing an agency relationship, they become personally liable for the obligation.  *Dunn v. Westlake*, 573 N.E.2d 84, 87 (Ohio 1991).  The Schwartzes might have signed the agreement with agency-creating words like "on behalf of" or words to similar effect, *Spicer v. James*, 487 N.E.2d 353, 355 (Ohio Ct. App. 1985),

but they did not. Nor does the agreement contain any other indicators of an agency relationship, such as professional titles following the Schwartzes' signatures or a provision disclosing the name of the principal for whom they worked. *See Hursh Builders Supply Co., Inc. v. Clendenin*, No. 2002CA00166, 2002 WL 31002802, at \*3 (Ohio Ct. App. Sept. 3, 2002).

One part of the agreement, the Gordons point out, says "The $1,000,000.00 is an investment by the Gordon[s] in the Darlington Nursing Home." Bankr. R.615 at 52. That the money was invested in Darlington does not show that Darlington guaranteed the investment, as opposed to the Schwartzes who signed it in their personal capacities. Neither does it matter that the Schwartzes promised to give the Gordons an equity share in Darlington or a cut of the company's annual profits. Again, the provisions mention the company, but that does not establish guarantees by the company, as opposed to the signatories—the Schwartzes. The terms of the profit clause, as it turns out, disclose the true guarantors of certain profit payments: "10% [a]nnual profit (guaranteed *by the Schwartz[es]* to be a minimum of $50,000 annually)." Bankr. R.615 at 52 (emphasis added).

Other parts of the agreement highlighted by the Gordons offer variations on this theme. They guarantee returns to the Gordons—that "[t]he principal investment is to be returned to Gordon," *id*.—without saying who is making the guarantee. In the absence of any language to the contrary, the natural way to read the agreement is that the guarantor is the party named throughout the rest of the agreement and the party who signed it: the Schwartzes.

The Gordons also invoke parol evidence to support their interpretation, but it is too late for that. At a hearing before the bankruptcy court, the parties stipulated that the agreement "is clear and unambiguous and, as a result, it would be inappropriate for either side to adduce parol evidence with respect to the meaning of that document." Bankr. R.605 at 71–72.

The Gordons respond that the bankruptcy court at one point used parol evidence in assessing their claim, making it permissible for them to do the same. But the court's reference to parol evidence was invited by an argument of the Gordons. Even if the bankruptcy court should not have mentioned the evidence, the answer is to review the merits of this dispute solely through the lens of the language of the agreement, which we and the district court have done. By all indications in the language of the agreement, the Schwartzes executed the agreement in their individual capacities, not on behalf of Dani or Darlington.

*Motion to file a new claim.* The bankruptcy court denied leave to file another claim after it determined that the Gordons' new claim was the same as the old claim and merely invoked new theories of unjust enrichment and rescission to support it. When the Gordons failed to pursue these new theories at trial, the bankruptcy judge deemed them abandoned. The Gordons now argue that the district court erred in holding that the theories had been abandoned because the court never told them they could argue the new theories at trial as part of their original claim.

Not true. At the hearing on their new-claim motion, the Gordons' attorney admitted that they had a "single claim" but were raising "a different theory" from the one they originally advanced.

May 12, 2009 Tr. (Bankr. R.567) 58-60, 62-63. "[W]e will proceed," the judge concluded, "with whatever facts have been developed in discovery but there will not be a claim other than the [original claim] that will be addressed. *The various theories can be addressed* but there will not be a separate claim." *Id*. at 64 (emphasis added).

What is the source of the confusion? The court denied the Gordons' motion for a new claim, not because it could never be raised but because it (and the new theories connected to it) could be raised as part of their original claim. That is hardly a "clear, explicit" statement "preclud[ing]" the Gordons from arguing their new theories at trial, as they now claim. Br. at 89–90. Nor do we see how the bankruptcy judge's decision "use[d] 'denied' [to] mean 'granted'" or caused "confusion and prejudice in the extreme." Br. at 90. The bankruptcy court did not err in denying the Gordon's motion to file a new claim or in deeming their new theories forfeited when they failed to raise them as part of their original claim at trial.

*Striking the trustee's exhibit list from the record*. After the district court denied their claim, the Gordons filed a notice of appeal and a designation of documents for the record on appeal. In their designation, the Gordons listed the "[t]rustee's 3-page trial exhibit list," a document that appeared in the front of two binders the trustee had submitted to the court in preparation for an evidentiary hearing. Bankr. R.596 at 13; Bankr. R.778 at 2. The clerk of court transmitted the record on appeal but apparently did not understand the Gordons' reference to the trial exhibit list, which prompted the Gordons to file the exhibit list separately with the bankruptcy court. The trustee moved to strike the exhibit list from the record because "[i]t is inappropriate for a party to

unilaterally attempt to introduce a document as part of the record on appeal when that document has never been filed in the underlying case." Bankr. R.628 at 2. The bankruptcy court granted the motion to strike because the exhibit list "was not relevant to the Court's substantive ruling and is not necessary to afford a complete understanding of the matter on appeal." Bankr. R. 778 at 3–4.

In challenging that decision, the Gordons face a conspicuous problem. Even if the bankruptcy court erred, a point we need not decide, the Gordons still must show prejudice. *In re Cannonsburg Envtl. Assocs., Ltd.*, 72 F.3d 1260, 1264–65 (6th Cir. 1996). There is no prejudice here. The Gordons give no indication how the trustee's exhibit list would have assisted them in making their argument. Our review of the document confirms as much: it is irrelevant to the Gordons' claims.

III.

For these reasons, we affirm.