NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0324n.06

No. 15-3146

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

IN RE ROYAL MANOR MANAGEMENT, INC., )
)
    Debtor. )
)
————————————————— )
)
DENNIS ALLAN GROSSMAN, )
)
    Plaintiff-Appellant, )
v. )
)
DAVID WEHRLE, Trustee, Liquidation Trustee, )
Successor-in-interest to Official Committee of )
Unsecured Creditors, )
)
    Defendant-Appellee. )

**FILED**
Jun 15, 2016
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
BANKRUPTCY APPELLATE
PANEL OF THE SIXTH CIRCUIT

**BEFORE: NORRIS, McKEAGUE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Dennis Grossman, an attorney who represented claimants pursuing a non-priority unsecured proof of claim in jointly administered Chapter 11 bankruptcy cases, appeals the Bankruptcy Appellate Panel's affirmance of the bankruptcy-court orders imposing $ 207,004 in sanctions against him and ordering post-judgment discovery. We AFFIRM the bankruptcy court's sanctions and post-judgment discovery orders.

**I.**

Debtor Royal Manor Management filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in February 2008. Darlington Nursing & Rehabilitation Center, Ltd. (Darlington), and Dani Family, Ltd. (Dani), filed voluntary petitions for relief under Chapter 11 soon after. The cases were jointly administered. Darlington operated a nursing home located on

real property owned by Dani. Sally and Abraham Schwartz were the majority owners of Royal Manor, Darlington, and Dani.

The U.S. Trustee, David Wehrle, appointed an Official Committee of Unsecured Creditors (Committee), which retained Brouse & McDowell as its counsel. The bankruptcy court set a July 1, 2008 deadline for the filing of general unsecured claims.

On June 26, 2008, Gertrude Gordon, Sally Schwartz's sister, filed a proof of claim pro se, asserting a non-priority unsecured claim against Darlington in the amount of $2,142,200 on behalf of her adult children, Alison and David Gordon, through a power of attorney. Gertrude Gordon submitted a redacted copy of an agreement dated July 27, 2000, on which the Gordon claim was based.

The Committee objected to the claim and the bankruptcy court set an October 7, 2008 hearing date. When no response to the Committee's objection was filed, the bankruptcy court sustained the objection on October 29, without a hearing, and disallowed the Gordon claim. Soon after, Grossman sought pro hac vice admission to represent the Gordons and moved to vacate the order disallowing the Gordon claim. The bankruptcy court granted him admission.

Various orders of the bankruptcy court and the BAP opinion set forth in detail the protracted proceedings that followed; such detail is not necessary here. *See In re Royal Manor Mgmt., Inc.*, 2013 WL 1310881 (Bankr. N.D. Ohio Mar. 28, 2013), supplemented by 2013 WL 6229151 (Bankr. N.D. Ohio Dec. 2, 2013); affirmed by *In re Royal Manor Mgmt., Inc.*, 525 B.R. 338 (B.A.P. 6th Cir. 2015). The bankruptcy court denied the Gordon claim on the merits following an evidentiary hearing. Grossman's clients unsuccessfully appealed to the district court, which agreed with the bankruptcy court that the July 27, 2000 agreement on which the Gordon claim was based was a personal obligation of the Schwartzes, and that the Gordons had

an equity interest in Darlington and were not creditors. *Gordon v. Wehrle*, Nos. 5:09 CV 2687, 5:10 CV 14312010, WL 3835223 at *8, 13 (N.D. Ohio Sept. 29, 2010).[1]

In response to Grossman's motion for pro hac vice admission to represent the Gordons in their appeal to the district court, the Trustee asserted that Grossman did not meet the standards of conduct expected of attorneys practicing in the Northern District of Ohio and should be denied admission; the Trustee also moved for sanctions against Grossman. The district court denied Grossman pro hac vice admission[2] and left the issue of monetary sanctions to the bankruptcy court. *Gordon v. Wehrle*, Nos. 5:09 CV 2687, 5:09 CV 1506 (N.D. Ohio Dec. 17, 2009) (emphasis added). Grossman filed a motion for reconsideration of the order denying pro hac vice admission, which the district court denied. *Gordon v. Wehrle*, No. 5:09 CV 2687, 2010 WL 234807 at *2–3 (N.D. Ohio Jan. 14, 2010).

**Trustee's Motion for Sanctions and Order to Show Cause why Sanctions Should not Enter**

In the meantime, on October 21, 2009, the Trustee filed a motion for sanctions in the bankruptcy court, under Fed. R. Bankr. P. 9011, against Gertrude, Alison, and David Gordon, their local counsel, and Grossman. Grossman objected and moved to recuse the bankruptcy court judge in the sanctions proceeding. The Trustee opposed Grossman's motion for recusal.

On January 29, 2010, the bankruptcy court sua sponte issued a show cause order requiring Grossman to explain why the bankruptcy court should not adopt the Trustee's statement of facts and issue sanctions against Grossman under 28 U.S.C. § 1927.

---

[1] Grossman also appealed the denial of his motion to file a new claim. The district court affirmed and strongly admonished Grossman for "blatantly mischaracterizing the [bankruptcy court] record." *Gordon v. Wehrle*, Nos. 5:09-cv-01506 (N.D. Ohio Oct. 16, 2009).

[2] Local counsel David Mucklow represented the Gordons until December 17, 2009, when the district court granted his motion to withdraw.

**Appeals to the Sixth Circuit**

Grossman appealed from the district court's affirmance of the bankruptcy-court order denying the original claim and a separate order denying Grossman's motion to file a new claim. This court consolidated the cases and affirmed. *In re Royal Manor Mgmt., Inc.*, 480 F. App'x 362, 363–65 (6th Cir. 2012). We denied the Gordons' petition for rehearing en banc, but stayed the mandate to allow them to seek certiorari. The Supreme Court denied certiorari without comment on September 26, 2012. *Gordon v. Wehrle*, 133 S. Ct. 653 (2012).

**Renewed Motion For Sanctions – December 2012**

On December 11, 2012, the Trustee filed a renewed motion for sanctions against Gertrude Gordon and Grossman under 28 U.S.C. § 1927 and, separately, pursuant to the bankruptcy court's inherent power under 11 U.S.C. § 105, seeking $326,410.18 in sanctions for fees and costs incurred through November 30, 2012, and all costs associated with pursuing the renewed motion for sanctions. The renewed motion for sanctions argued that there was no credible evidence or legal basis to support that the Gordons were general unsecured creditors of Dani, Darlington, or any other debtor entity, yet Gertrude and Grossman continued to file frivolous pleadings to vexatiously multiply the proceedings. The Trustee asserted that the bankruptcy court could properly award sanctions pursuant to its inherent authority under § 105(a) of the Bankruptcy Code given Gordon's and Grossman's vexatious litigating of the matter, and under 28 U.S.C. § 1927 because Grossman's actions fell short of the obligations owed by a member of the bar to the court and caused additional expense to the Trustee.

However, before the hearing on the Trustee's renewed motion for sanctions, Gertrude Gordon entered into a compromise settlement with the Trustee. Grossman objected to this settlement, which resulted in a hearing. *See* R. 971 (response to Trustee's Mot. to Compromise);

R. 984 (supplemental response to Trustee's Mot. to Approve Proposed Settlement), R. 986 (response to Trustee's Latest Amended Proposed Settlement Order). Following the hearing, the bankruptcy court authorized the compromise settlement in an order stating that Gertrude Gordon shall pay $50,000.00 to the Trustee and that "[t]he Trustee and the Gordons shall mutually release each other and all professionals retained by either . . . with the exception of Attorney Dennis Grossman, from all claims, liabilities, and causes of action in relation to the Gordons' claim (and any appeals therefrom) and the sanctions issues in this Court." R. 988 at 3-4. Grossman moved for reconsideration, the Trustee opposed the motion, and the bankruptcy court denied reconsideration by order dated March 18, 2013.

**Hearings on Trustee's Motions for Sanctions**

Following extensive briefing, a hearing was held on the Trustee's motions for sanctions on January 15, 2013, at which Grossman and Trustee's counsel, Louise Mazur, testified. The Trustee reduced the amount of sanctions sought against Grossman to $159,335.23, representing fees and costs the Trustee incurred at the bankruptcy-court level only, and only after Grossman entered his appearance.

The bankruptcy court opinion and order entered March 28, 2013 noted, "[a]s confirmed by the Sixth Circuit, the characterization of the Gordon Claim as not a claim against the bankruptcy estate was a straight forward matter," and explained its sanctions award:

> 7. For more than four years and continuing to the present Grossman seemed to find any and every occasion to multiply the ongoing proceedings. Attached to this opinion as Appendix A and incorporated herein is a summary of the pleadings that Grossman had filed in this Court and the arguments contained therein between November 2008 and the date of the hearing of this motion; it does not include the pleadings in the three appeals that he has pursued, variously in the District Court, the Court of Appeals and in the Supreme Court, where certiorari was denied. The summary shows at a glance not only [the] number of documents filed by Grossman, but also the repetitive and vexatious nature of the filings. Since the January 15, 2013

hearing, he has filed an additional seven pleadings in this Court. (Dkt. 971, 976, 984, 986, 991, 994 and 998).

8. [T]he Liquidation Trustee's initial distribution to holders of allowed Class 5 claims was reduced as a result of the reserve he was required to maintain, should the Gordon Claim be found meritorious on appeal. In fact, Grossman argued that no distribution should be made to Class 5 claims holders until the Gordons' appeals had concluded. [Dkt. 820 and 826.] Those holders of allowed claims waited another 29 months for a second distribution that had been eroded by the activity occasioned by Grossman's multitudinous filings. The Liquidation Trustee made an interim distribution on allowed Class 5 claims, reserving for the possibility of reversal on appeal.

9. In short, Grossman well understood that his effort to convert the Gordon[] claim against their aunt and uncle into a claim against the bankruptcy estate was delaying the distribution of approximately $750,000 to holders of allowed claims, while also causing the erosion of funds available for distribution due to the fees that the Liquidation Trust was incurring when . . . counsel responded to Grossman's ever swelling and often frivolous filings. He compounded his absence of compelling arguments with needless multiplication and repetition of specious arguments . . . .
. . . .
11. On numerous occasions both the Liquidation Trustee's counsel and this Court reminded Grossman that his actions in delaying the final administration of the funds available to holders of allowed claims exposed him to sanctions . . . .

Following are this Court's conclusions of law:
. . . .
5. Litigation tactics that hinder a final resolution of controversies are always unwelcome. In the context of the collective creditor remedy that bankruptcy provides, tactics that delay and reduce the percentage dividend to holders of allowed claims warrant special scrutiny. When repeated reminders to a counsel of his obligations under 28 U.S.C. § 1927 prove unavailing, a trustee's pursuit of sanctions is a most appropriate exercise of his business judgment. *See In re Tenn–Fla Partners*, 226 F.3d 746, 748–751 (6th Cir. 2000) (awarding attorney's fees for debtor's fraudulent conduct for providing "misleading and incomplete disclosures," in securing confirmation of its Chapter 11 reorganization plan); *In re Downs*, 103 F.3d 472, 478–79 (6th Cir. 1996) (affirming a bankruptcy judge's sanctions and denying all fees to a bankruptcy attorney who failed to disclose his compensation arrangement with the debtor as required by 11 U.S.C. § 329); *Trulis v. Barton*, 107 F.3d (9th Cir. 1995) (continuing to pursue action against chapter 11 debtor's principals after entry of bankruptcy court order confirming plan that explicitly barred such claims found to be unreasonable and vexatious multiplications of proceedings as a matter of law).

Not long after Grossman began his representation, he received the unredacted document on which Gertrude Gordon had "relied," after certain artful copying, in

filing the Gordon Claim. What that document memorialized was a loan from one set of family members to another with the possibility of an equity position . . . . At no time in this case did Grossman produce a shred of documentation that the Gordons were creditors of Dani or Darlington or any other debtor in this case. Grossman must . . . be sanctioned because his conduct,

> from an objective standpoint, [fell] short of the obligations owed by a member of the bar to the court and ... cause[d] additional expense to the opposing party . . . . . Accordingly ... when an attorney knows or reasonably should know that . . . his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney. Bad faith is not required to support a sanction under § 1927.

*Wilson–Simmons v. Lake County Sheriff's Department*, 207 F.3d 818, 824 (6th Cir. 2000).

. . . .

7. In awarding sanctions under § 1927, some courts have considered the respondent's ability to pay. *Kapco Mfg. Co., Inc. v. C & O Enterprises*, 886 F.2d 1485 (7th Cir. 1989). Grossman did not raise the issue of ability to pay in his pleadings, and he certainly did not present any competent evidence of inability to pay despite having been afforded a full day hearing.

8. In discharging his fiduciary duties, the Liquidation Trustee needed to defend against Grossman's pleadings. The fees incurred by the Liquidation Trustee at the bankruptcy court level were proportionate to controversies that Grossman chose to frame.

*In re Royal Manor Mgmt., Inc.*, Nos. 08-50421, 08-50657, 08-50722, 2013 WL 1310881, at *4–7 (Bankr. N.D. Ohio Mar. 28, 2013). After noting that the Liquidation Trustee incurred "approximately $150,000.00 in fees prior to the hearing of this motion," the bankruptcy court allowed the Trustee five days to notify the court whether he would seek an additional hearing to address fees incurred as a result of the hearing on the motion and the additional pleadings that Grossman filed after the hearing.

The Trustee sought additional fees relating to the additional filings by Grossman after the January 15 hearing. Grossman objected to the Trustee's request for additional fees, and the Trustee responded to Grossman's objection. The court held a hearing on August 27, 2013, at

which Grossman, Trustee Wehrle, and Mazur testified, and entered a final judgment awarding

$57,004 in additional sanctions to cover the attorney fees incurred by the Trustee after November

30, 2012; resulting in a total amount of $207,004:

> The Sixth Circuit has held that when an attorney's unreasonable and vexatious conduct begins at the outset of his/her representation and persists through the pendency of the case, the attorney is properly liable under § 1927 to pay attorney fees that began to accrue at the commencement of the case. *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997) [(affirming § 1927 award of attorney fees from filing of the complaint where counsel's "unreasonable and vexatious behavior began with the filing of the complaint and persisted throughout the pendency of the case.")]; *accord Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 645–46 (6th Cir. 2009) [(same)]. In this case, one appropriate measure of the sanctions to be imposed upon Grossman under § 1927 consists of the attorney fees incurred by the Liquidation Trustee from the point in time when Grossman's conduct became frivolous, unreasonable and/or vexatious. As the Court noted in its Opinion, Grossman's conduct became unreasonable very early on in the course of the litigation over the claim asserted by Gertrude Gordon on behalf of David and Alison Gordon. The fees incurred by the Liquidation Trustee in the course of having to respond to the vexatious and unreasonable filings of Grossman leading up to and even after the Court conducted the January 15, 2013 hearing on sanctions are properly included as a part of the appropriate sanctions in this case.
>
> Citing *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 620 (6th Cir. 2007)[,] . . . Grossman . . . argues that a fee award is limited to a certain percentage of the lodestar calculation of reasonable and necessary fees. However . . . . [t]he Liquidation Trustee is seeking an award of an appropriate amount of sanctions for Grossman's conduct; he is not seeking to recover fees for preparing a fee application or request for fees based on the outcome of substantive litigation. Furthermore, the general rule relied upon by Grossman regarding the limitation of awarding fees for preparing and litigating an attorney fee case is just that—a general rule, which applies only in the absence of unusual circumstances. *Coulter* [*v. Tenn.*], 805 F.2d 146, 151 (6th Cir. 1986) [(affirming district court's reducing fee requested for preparing and litigating attorney fee matter to 3% of the hours allowed in main case, noting that "[t]he attorney fee case is not the case Congress expressed its intent to encourage; and in order to be included, it must ride piggyback on the civil rights case.")], *see also Gonter v. Hunt Valve Co.*, 510 F.3d at 620 [(applying 3% rule of *Coulter*)]. Even assuming that the holding in *Coulter* is applicable to this case, the facts of this case warrant departure from the general rule to allow the appropriate amount of sanctions to be meted out . . . [T]he amount of fees incurred by the Liquidation Trust has a direct impact on the sum available for distribution to creditors in this case. It would be inequitable to deny those creditors the ability to recover the fees incurred by the Liquidation

Trustee as the result of the repetitive, frivolous, and vexatious conduct of Grossman.

*In re Royal Mgmt., Inc.*, Nos. 08-50421, 08-50657, 08-50722, 2013 WL 6229151, at *6–7 (Bankr. N.D. Ohio, Dec. 2, 2013).

**Post-Judgment Discovery and Collection Issues**

After the bankruptcy court entered the sanctions judgment, the Liquidation Trustee served Grossman with interrogatories and document requests. While the sanctions judgment was on appeal to the BAP, the Trustee filed, and the bankruptcy court held a hearing and granted, a motion to compel Grossman to respond to written discovery and appear for a debtor's examination, and a motion to employ two law firms as special counsel (one in New York and one in Florida) to attempt to collect the sanctions judgment against Grossman on a contingent-fee arrangement. Grossman appealed the bankruptcy court orders granting the Trustee's two motions, as well as the denial of his renewed motions to recuse. The BAP affirmed the bankruptcy court orders in a sixty-page opinion.

**The Instant Appeal**

Grossman appeals the final judgment of the BAP affirming the bankruptcy court orders imposing $ 207,004 in sanctions and ordering post-judgment discovery against him. Our review is of the underlying decisions of the bankruptcy court, rather than the BAP or district court. We review the court's sanctions award for an abuse of discretion, *Jordan v. Cleveland*, 464 F.3d 584, 600 (6th Cir. 2006), its factual findings for clear error, and its conclusions of law de novo, *In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998).

**II.**

The bankruptcy court imposed sanctions under 28 U.S.C. § 1927 and 11 U.S.C. § 105. Section 1927 provides: "Any attorney . . . admitted to conduct cases in any court of the United

States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 sanctions are warranted when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (quoting *Ruben v. Warren City Schs.*, 825 F.2d 977, 984 (6th Cir. 1987)).

Section 105(a) of the Bankruptcy Code provides that a bankruptcy court may issue "any order, process, or judgment that is necessary or appropriate," and "[n]o provision of this title . . . shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

A.

We reject Grossman's assertion that the bankruptcy court erred in imposing sanctions for an allegedly frivolous claim. Although the bankruptcy court used the term "frivolous filing," it sanctioned Grossman for multiplying the proceedings unreasonably and vexatiously after finding that Grossman knew that his "multitudinous" and repetitive filings would needlessly delay distribution to legitimate claim holders and erode funds available for distribution. Thus, it is not clear that the bankruptcy court sanctioned Grossman for pursuing a "frivolous claim."[3] In any event, neither authority for imposing sanctions—28 U.S.C. § 1927 and § 105 of the Bankruptcy

---

[3] The BAP's discussion regarding the bankruptcy court's award of sanctions characterized as "frivolous" the theories underlying the Gordon claim and various filings, *see id.*, 525 B.R. at 368, but the bankruptcy court at no point explicitly stated that the Gordon claim itself was frivolous, as opposed to various filings.

Code—requires a finding that the underlying claim is frivolous. The bankruptcy court's conclusions regarding the vexatious and unsupported nature of the filings were amply supported and not an abuse of discretion, and such findings are adequate to support an award of sanctions.

**B.**

Grossman's sub-argument that the district court and this court saw no need for sanctions is unfounded. One of the district court's opinions stated that the Gordons' first appeal did not rise to the level of "being truly frivolous," and left the issue of monetary sanctions against Grossman to the bankruptcy court, noting that its denial of pro hac vice admission was a sufficient sanction for Grossman's misconduct before the district court. *See Gordon v. Wehrle*, No. 5:09 CV 2687, 2010 WL 234807, at \*1 (N.D. Ohio Dec. 17, 2009). A subsequent district-court order that Grossman appealed to this court did not involve the issue of sanctions, *Gordon v. Wehrle*, Nos. 5:09 CV 2687, 5:10 CV 1431, 2010 WL 3835223 (N.D. Ohio Sep. 29, 2010), nor did this court's decision, *Gordon v. Wehrle* (*In re Royal Mgmt., Inc.*), 480 F. App'x 362 (2012).

**III.**

Also meritless is Grossman's argument that the bankruptcy court abused its discretion by declining to limit the sanctions award on the basis that the Trustee failed to move for summary judgment early in the proceedings. *See Ruben v. Warren City Schs.* (*In re Ruben*), 825 F.2d 977, 988 (6th Cir. 1987) (sanctions are "generally improper where a successful motion could have avoided any additional legal expenses by defendants."). The Gordon claim went through several permutations (original claim for money loaned based solely on the July 2000 Agreement between the Gordons and Schwartzes; amended claim for money loaned based on parole evidence; amended claim for unpaid dividends; new claims of rescission and unjust enrichment based on alleged forgery of Gordon signatures on different agreements; and new claim of priority

payments based on same alleged forgeries). In the face of these shifting theories, the Trustee's piecemeal filing of dispositive motions on the various claims could have delayed the proceedings and distributions to legitimate claim holders. The bankruptcy court did not abuse its discretion in declining to limit the sanctions on this basis.

## IV.

A court must give notice and an opportunity to be heard before imposing sanctions against an attorney, *Cook v. Am. S.S. Co.*, 134 F.3d 771 (6th Cir. 1998). However, contrary to Grossman's characterization of the record, he had fair notice of the allegations against him and was not denied due process. The Trustee's motion asserted that sanctions should be awarded against Gertrude Gordon and Grossman because they acted vexatiously and in bad faith throughout the proceedings and abused the bankruptcy process. The Trustee's renewed motion sought as sanctions all attorney fees incurred in defending against the Gordon claim, attached billing statements related to the Gordon claim showing fees and expenses, and sought recovery of the amounts expended by the Committee and Trustee only at the bankruptcy-court level. Grossman responded to the Trustee's motions and participated in hearings. Grossman's claim of deprivation of due process thus fails.

## V.

Grossman asserts that the bankruptcy court erred by failing to specify which of his filings it found frivolous or vexatious and, instead, grouping them together "in one amorphous undifferentiated mass." Grossman is correct in the sense that two appendices to the bankruptcy court's second opinion awarding sanctions summarize Grossman's many filings and arguments therein, R. 999 at 13-50 (op. 3/28/13). But the bankruptcy court's reasoning in sanctioning Grossman is crystal clear—that throughout the proceedings his actions rose "to the level of

vexatious conduct designed to delay, multiply and increase the cost of the proceedings. It is not one particular filing or the actions . . . in one hearing . . . it is the pervasive and constant behavior . . . over the course of the four plus years since he was admitted pro hac vice." R. 1057 at 4. Under these circumstances, the bankruptcy court was not required to address each filing and billing separately, and we find no error or abuse of discretion.

## VI.

Also without merit is Grossman's assertion that the bankruptcy court should have denied the Trustee's sanctions motion for being a day late. The bankruptcy court acted within its broad discretion when it expanded its deadline for filing the renewed motion for sanctions by one day. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962) (federal courts have inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases."); *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010) ("a district court has broad discretion to manage its docket"). The cases Grossman cites in support of his argument that this circuit and the Supreme Court "consistently require denial of one-day-late filings to ensure deadline integrity" (Appellant Br. 66) involve deadlines over which courts have no authority, including notice-of-appeal and statute-of-limitations deadlines. *See Carlisle v. United States*, 517 U.S. 416, 430 (1996) (district court lacked authority to consider motion for judgment of acquittal filed outside time limit set by Fed. R. Crim. P. 29(c)); *United States v. Locke*, 471 U.S. 84, 100 (1985) (court could not extend congressionally set deadline to file claims under Federal Land Policy & Management Act, 43 U.S.C. § 1744); *FHC Equities, LLC v. MBL Life Assur. Corp.*, 188 F.3d 678, 682 (6th Cir. 1999) (extension of time permitted under Fed. R. Civ. P. 6(e) [now 6(d)] does not apply to Rule 59(e) motions to alter or amend judgment and district court had no authority to extend deadline); *Cook v. Comm'r*, 480 F.3d 432, 437 (6th Cir. 2007) (Social

Security civil action filed one day after 60-day limitations period should be dismissed); *Merriweather v. Memphis*, 107 F.3d 396, 400 (6th Cir. 1997) (claim barred where plaintiff missed Tennessee's one-year limitations period for tort actions brought under federal civil rights statutes by one day); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 269 F.3d 552, 561 (6th Cir. 2000) (affirming district court's dismissal of Title VII employment discrimination complaint filed late as time barred); *Johnson v. U.S. Postal Serv.*, No. 86-2189, 1988 WL 122962, at *3, 863 F.2d 48 (6th Cir. 1988) (because appeal to EEOC was untimely, plaintiff failed to exhaust administrative remedies and district court thus lacked jurisdiction over her claim); *Watson v. Brady*, No. 92-6304, 1993 WL 469078, at *1, 9 F.3d 1548 (6th Cir. 1993) (affirming dismissal of civil rights complaint against federal government for failure to serve proper parties under Fed. R. Civ. P. 4 within statutorily mandated time). The instant deadline, in contrast, was court imposed and could properly be modified by the court.

Grossman relatedly argues that sanctions proceedings under 28 U.S.C. § 1927, although possessing civil features, are also penal and quasi-criminal, and that the ex-post facto clause prohibits changes in criminal filing deadlines to resurrect an untimely prosecution after the deadline has expired. Appellant Br. 70. But here, the Trustee's renewed motion for sanctions reactivated the already-pending issue of sanctions; it did not "resurrect" an untimely motion for sanctions.

## VII.

Grossman next asserts that the bankruptcy court erred by failing to address the Trustee's purportedly excessive and frivolous filings as a defense or offset to sanctions against him, and by failing to address the bankruptcy court's own delays caused by its inconsistent orders directing the parties to switch back and forth between different issues. Grossman advanced the first two

arguments in support of his argument that the bankruptcy court should have limited sanctions because the Trustee did not move for summary judgment early in the proceedings, i.e., failed to mitigate. We have addressed and rejected that argument in section III. Other than in that context, Grossman asserted in two short alternative arguments that the Trustee's "excessive filings" and the bankruptcy court's "constantly changing directions" should negate any proposed sanctions against him. R. 957 at 41-42. The record supports neither argument. At one point, it appeared that disposing of the case on an alternative ground would quickly resolve the claim; when that proved not to be the case, the bankruptcy court returned to the controlling issues. This hardly undermines the bankruptcy court's determination that the Trustee incurred the fees to defend against Grossman's excessive filings.

Grossman's third and final "defense"–that the bankruptcy court erred by denying credit in the amount Gertrude Gordon paid the Trustee to settle the sanctions motion against her is also meritless. The bankruptcy court did not abuse its discretion in concluding that Gertrude Gordon's separate actions "supported an independent sanction against her pursuant to § 105 [of the Bankruptcy Code], i.e., the filing of the Gordon Claim with an altered document in support thereof." As the bankruptcy court explained, because Grossman began his representation of Gertrude Gordon more than three months after she filed the proof of claim with an altered document, there was a separate basis for the Trustee's ultimately consensual recovery from Gertrude Gordon, and Grossman is not entitled to a reduction. Further, sanctions under § 1927 are limited to "attorneys or other persons admitted to conduct cases." The bankruptcy court did not abuse its discretion in concluding that the liquidation estate was harmed in an amount that is greater than just the fees that the Liquidation Trustee incurred at the bankruptcy court level,

including by the long delay in distributing the available funds, or in its determination that sanctions serve several purposes.[4]

## VIII.

Next, Grossman contends that neither 28 U.S.C. § 1927 nor the bankruptcy court's inherent authority under § 105 of the Bankruptcy Code authorizes the imposition of the sanctions awarded by the bankruptcy court. There is a split of authority regarding whether a bankruptcy court is a "court of the United States" within the meaning of 28 U.S.C. § 1927; the Ninth and Tenth Circuits answering in the negative and the Second, Third, and Seventh Circuits answering in the positive. *Compare Miller v. Cardinale* (*In re Deville*), 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002), *judgment aff'd*, 361 F.3d 539 (9th Cir. 2004) ("the Ninth Circuit does not regard a bankruptcy court as a 'court of the United States'"); *Jones v. Bank of Santa Fe* (*In re Courtesy Inns, Ltd., Inc.*), 40 F.3d 1084, 1086 (10th Cir. 1994) ("bankruptcy courts are not within the contemplation of § 1927"), *with In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 105 (3d Cir. 2008) (bankruptcy court has authority to impose sanctions under § 1927 because it is a unit of the district court, which is a "court of the United States"), *Adair v. Sherman*, 230 F.3d 890, 895 n.8 (7th Cir. 2000) (bankruptcy courts have authority to sanction attorneys under § 1927); *Baker v. Latham Sparrowbush Assoc.* (*In re Matter of Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 230 (2d Cir. 1991) (bankruptcy courts have authority to impose § 1927 sanctions). No published decision of this court addresses this question, but in *Maloof v. Level Propane Gasses, Inc.*, 316 F.

---

[4] The bankruptcy court determined that because Gertrude Gordon "was settling a claim filed against her asking that she be held jointly and severally liable for an amount in excess of $300,000 . . . there is no basis for reducing the sanction against Grossman by that settlement amount." The court further determined that the purpose of the sanction against Grossman "is at least two-fold: (1) underscoring the need for him to abide the minimum standards required under 28 U.S.C. § 1927 in the future and (2) making up some of the value lost to the holders of legitimate claims in this case." R. 999 at 8.

App'x 373, 376 (6th Cir. 2008) (per curiam), this court affirmed a bankruptcy court's sanctions order under § 1927, observing that federal courts, including bankruptcy courts, have inherent and statutory authority to impose sanctions (citing *Rathbun v. Warren City Schs. (In re Ruben)*, 825 F.2d 977, 982–84 (6th Cir. 1987)). And more recently, in *Followell v. Mills*, 317 F. App'x 501, 513–14 (6th Cir. 2013), this court vacated the bankruptcy court's denial of sanctions under § 1927 and remanded for reconsideration of the appropriateness of sanctions without questioning the bankruptcy court's authority under the statute. We find *Followel* and *Maloof* persuasive and follow them here.

As for the bankruptcy court's inherent authority under § 105 of the Bankruptcy Code, Grossman asserts that such authority "is available only if the sanctions rules are not up to the task, typically where disputed actions did not involve Court filings." Appellant Br. 86. Grossman is incorrect. A court's inherent authority to impose sanctions is not displaced by sanctions schemes available through statutes or court rules, *Chambers v. NASCO, Inc.*, 501 U.S. at 32, 46, 50 (1991); rather, such inherent authority provides an independent basis for sanctioning bad-faith conduct in litigation, *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 518 n.14 (6th Cir. 2002).

## IX.

Grossman also challenges the bankruptcy court's refusal to recuse itself. We review the bankruptcy court's denials of Grossman's motions for disqualification for abuse of discretion. *Schilling v. Heavrin (In re Triple S. Rests., Inc.)*, 422 F.3d 405, 417 (6th Cir. 2005). As pertinent here, recusal is required where a judge's impartiality might reasonably be questioned, or where a judge has a personal bias or prejudice concerning a party. 28 U.S.C. § 455(a) & (b)(1).

As the BAP noted, "bias must either be based on an extrajudicial source, which is not alleged, or because it is undeserved or excessive in degree or the behavior is 'so extreme as to display clear inability to render fair judgment.'" *In re Royal Manor Mgmt., Inc.*, 525 B.R. at 380 (quoting *Liteky v. United States*, 510 U.S. 540, 550–51 (1994)). We agree with and adopt the portion of the BAP opinion addressing recusal, and its determination that the bankruptcy court did not abuse its discretion by denying Grossman's motions to recuse, *In re Royal Manor*, 525 B.R. at 380–84.

## X.

Finally, regarding the order for post-judgment discovery, we agree with the BAP that "the bankruptcy court was within its discretion to determine that special counsel was needed to collect a judgment that the Trustee believed Grossman was not going to willingly pay." *Id.*, 525 B.R. at 387. We further agree with the BAP's affirmance of the bankruptcy court's order compelling Grossman to appear at a debtor's examination, i.e., that "this type of examination is an entitlement of a judgment creditor pursuant to Ohio Revised Code § 2333.09 and the Bankruptcy Judge's authority to apply this Ohio statute is found in Federal Rule of Civil Procedure 69(a)(2)." *Id.* For these reasons, we AFFIRM the bankruptcy court orders imposing sanctions and ordering post-judgment discovery against Grossman.